RICHARD WIGHTMAN, Respondent, *v.* G. G. HYNSON & Co., INC., Appellant.

First Department, July 1, 1921.

**Principal and agent — agreement by firm of stockbrokers to pay agent fifty per cent of net profits on sale of stock — commissions paid firm and salary paid president not chargeable against gross profits.**

A firm of stockbrokers, employed to float an issue of stock, which agreed with plaintiff to pay him fifty per cent of the net profits which accrued to him from the sale of the stock, has no right to charge against the gross profits any commission paid to the firm itself for making any sale, nor has it the right to charge anything for the salary of its president.

APPEAL by the defendant, G. G. Hynson & Co., Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 26th day of April, 1920, on the verdict of a jury, and also from an order entered in said clerk's office on the 28th day of April, 1920, denying defendant's motion for a new trial made upon the minutes.

*Harry N. Selvage* of counsel [*Otto A. Gillig*, attorney], for the appellant.

*Hector M. Hitchings* of counsel [*J. Elmer Melick* with him on the brief; *Hitchings & Burdick*, attorneys], for the respondent.

SMITH, J.:

The defendant was employed by the Osage Oil and Refining Company to sell stock of said company. The defendant's president was first introduced to the representative of that company by the plaintiff, and the plaintiff did some work thereafter in going to Chicago to arrange about the advertising for the sale of the stock. The Osage Oil and Refining Company was engaged in the development of some lands in Oklahoma. The plaintiff has sworn that the defendant agreed to give to the plaintiff fifty per cent of the net profits which accrued to him from the sale of this stock. It appears that the plaintiff sold 402,115 shares of the stock for which defendant received

$421,763.35. This amount seems to be in part contradicted by the evidence, wherein the defendant's president swears that the amount that was received for the stock, after certain returns, amounted to $410,573.25. From this was paid to the Osage Company $219,697.23, and this would leave, as retained by the defendant $190,876.02. From this it is claimed by the defendant that they paid in commissions $141,000 for salesmen, and other expenses are claimed to have been paid in the sum of $52,056.89, and $500, making $413,567.09, claimed to be the expenses which are to be deducted before the ascertainment of the net profits. But this would result in a loss of $2,993.84. These other expenses, amounting to $52,056.89, consisted of rent, advertising, postage, printing, stationery, office salaries and general overhead expenses. All of the overhead expenses of the defendant corporation during the period from January to August of 1918 have been charged against this gross profit. It is sworn to by one of the witnesses that during this time they were doing no other business.

Of these commissions claimed to have been paid the defendant claims to have paid itself for commission the sum of $32,210.28, and to have paid to the defendant's president the sum of $7,000, making in all the sum of $39,210.28. It is not disclosed, aside from these two items, what entered into the commission charge of $141,000, or the other expenses of $52,000. The plaintiff only claims the right to fifty per cent of the net profits.

The defendant clearly had no right to charge against the gross profits any commission paid to the firm itself for making any sale, nor did it have a right to charge anything for the salary of the defendant's president, so that upon the proof, as it appears in the record, it cannot be said that the plaintiff has proven a net profit of more than $39,210.28, less the amount of loss as sworn to by the defendant of $2,993.84. The largest amount, therefore, to which the plaintiff has shown himself entitled under the evidence is one-half of $36,216.44, which amounts to $18,108.22, and the jury was not authorized upon the evidence to render a verdict for the plaintiff in any sum in excess of that amount.

The judgment and order, therefore, must be reversed and

a new trial granted, with costs to the defendant to abide the event, unless the plaintiff will stipulate to reduce the verdict to the sum of $18,108.22. If such stipulation be filed, the judgment may be amended to conform thereto, and as amended the judgment and order may stand affirmed, without costs.

CLARKE, P. J., LAUGHLIN, PAGE and MERRELL, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event unless plaintiff stipulates to reduce verdict to $18,108.22, in which event the judgment as so modified and the order appealed from are affirmed, without costs. Settle order on notice.